IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

JAMES BARWICK,                                          :
                                                        :
     Plaintiff,                                        :
                                                        :
v.                                                      :          CASE NO.: 1:21-CV-144 (LAG)
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
     Defendant.                                        :
                                                        :

## ORDER

Before the Court is Plaintiff's Motion to Preclude Defendant's Expert, Vera F. Dolan, MSPH FALU, from Offering Expert Testimony (Motion). (Doc. 21). For the reasons stated below, Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

On August 10, 2021, Plaintiff initiated this medical malpractice action against Defendant United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80. (Doc. 1 ¶ 3). Plaintiff alleges that Dr. Phillip R. Poulos treated him in October 2019 when Plaintiff went to Albany Area Primary Health Care, Inc. (AAPHC) presenting abdominal pain symptoms. (*Id.* ¶¶ 14–26). Dr. Poulos is an employee of AAPHC, which is funded by the Department of Health and Human Services. (*Id.* ¶¶ 8, 13, 16). Plaintiff alleges that between October 8 and October 14, 2019, Dr. Poulos and medical care providers at AAPHC failed to exercise the requisite duty of care in treating his perforated appendix, resulting in Plaintiff suffering from sepsis and having to undergo a hemicolectomy. (*Id.* ¶¶ 28–33). The Parties have agreed to litigate the issue of damages—the only remaining issue in this case—before the Court and without a jury. (*See* Doc. 21-1 at 3; Doc. 26 at 2–4).

The Court entered the Scheduling and Discovery Order for this case on November 23, 2021, and extended the discovery deadlines six times. (Docs. 6, 9, 11, 13, 15, 17, 19).

The Court ultimately set the deadline for the Parties to serve supplemental expert reports to November 28, 2022. (Doc. 17 at 1). During discovery, Defendant identified Vera Dolan, an epidemiologist and life underwriting consultant, as an expert witness. (*See* Doc. 21-1 at 1; Doc. 21-3 at 27). She holds a Master of Science in Public Health with a concentration in epidemiology from the University of North Carolina at Chapel Hill and a Bachelor of Arts from Johns Hopkins University. (Doc. 21-3 at 27). Additionally, Dolan is a fellow of the Academy of Life Underwriting. (*Id.*). On July 8, 2022, Dolan provided an initial Expert Report (Initial Report), and Plaintiff deposed Dolan on August 26, 2022. (Docs. 21-3, 21-4). The Initial Report opines that: (1) as of October 8, 2019, Plaintiff "had a lower life expectancy than the 31.6 years expected for the average 48 year old U.S. non-Hispanic white male, with a middle estimate of 13.9 years," and (2) Plaintiff's "primary mortality risks were alcohol use disorder [AUD], type 2 diabetes with comorbidities, and current smoking." (Doc. 21-3 at 2).

On February 13, 2023, Plaintiff filed a Motion seeking to preclude the Initial Report and testimony of Dolan "on the basis that her testimony does not satisfy the requisite foundation for admissibility under Federal Rule[] of Evidence 702[.]" (Doc. 21 at 1). Specifically, Plaintiff asserts that the Court should preclude the Initial Report because Dolan is not a medical doctor who can opine on whether Plaintiff has undiagnosed AUD. (Doc. 21-1 at 2–3). Defendant responded to the Motion on March 20, 2023. (Doc. 26). While Defendant does not concede that Dolan is not qualified to opine on whether Plaintiff has undiagnosed AUD, Defendant timely submitted a Supplemental Expert Report (Supplemental Report) from Dolan dated November 23, 2022. (Doc. 26-1; *see* Doc. 26 at 6–7). In the Supplemental Report, Dolan states:

> In addition to my expert report dated July 8, 2022, you asked me to calculate the life expectancy of [Plaintiff] as of the morning of his visit to AAPHC on October 8, 2019, when he was 48 years old, using only his mortality risks based on type 2 diabetes with comorbidities and current smoking. Per your request, I have calculated a statistical life expectancy that indicates [Plaintiff] had a lower life expectancy than the 31.6

2

> years expected for the average 48 year old U.S. non-Hispanic
> white male, with a middle estimate of 17.4 years . . . .

(Doc. 26-1 at 3). Plaintiff did not file a Reply or otherwise respond to the submission of the Supplemental Report. (*See* Docket). The Motion (Doc. 21) is now ripe for review. *See* M.D. Ga. L.R. 7.3.

## LEGAL STANDARD

The Court, in its gatekeeping role, is required "to conduct an exacting analysis of the *foundations* of expert opinions to ensure they meet the standards for admissibility under [Federal] Rule [of Evidence] 702." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation marks omitted) (citation omitted). This role is particularly important because an expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). Thus, the Court must ensure that an expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Frazier*, 387 F.3d at 1260 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Under Federal Rule of Evidence 702, expert testimony may be admitted when:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Eleventh Circuit has "distilled the expert admissibility inquiry" under Rule 702 "into the following three factors:"

> (1) the expert is qualified to testify competently regarding the matters he intends to address;

3

> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850–51 (11th Cir. 2021) (citation omitted). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citation omitted).

"An expert's training or education may provide one means by which an expert may qualify to give certain testimony; however, experience in a particular field may also qualify an expert to offer an opinion on a particular matter." *Tindall v. H & S Homes, LLC*, No. 5:10-CV-044(CAR), 2012 WL 3241885, at *7 (M.D. Ga. Aug. 7, 2012) (citing *Frazier*, 387 F.3d at 1260–61). "Indeed, 'experts come in various shapes and sizes,' and, consequently, 'there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field.'" *Monroe v. United States*, No. 3:12-CV-92 (CAR), 2014 WL 1315242, at *2 (M.D. Ga. Mar. 31, 2014) (quoting *Santos v. Posadas de P.R. Assocs.*, 452 F.3d 59, 63 (1st Cir. 2006)). A "district court must therefore focus its inquiry on whether the expert has the requisite knowledge, skill, experience, training, and education to offer the testimony he intends to introduce." *Tindall*, 2012 WL 3241885, at *7 (citing Fed. R. Evid. 702).

"[A]n expert's reliability," however, is different from "an expert's believability or persuasiveness, which is reserved for the trier of fact." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005) (citation omitted). To assess reliability, district courts must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1262 (omission in original) (quoting *Daubert*, 509 U.S. at 592–93). "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Further,

4

> [t]o evaluate the reliability of scientific expert opinion, [courts] consider . . . : "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community."

*Frazier*, 387 F.3d at 1262 (citation omitted); *see also Daubert*, 509 U.S. at 593–94. "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *Frazier*, 387 F.3d at 1262 (first citing *Kumho Tire Co.*, 526 U.S. at 150–52; then citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments; and then citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)).

Rule 702 also requires that expert testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63 (citation omitted). "[E]xpert testimony [is] admissible if it offers something 'beyond the understanding and experience of the average citizen.'" *Id.* at 1262 (quoting *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). An expert's opinion must also "fit . . . the facts of the case." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (internal quotation marks omitted) (citation omitted). Even when an expert's opinion is "valid and follows appropriately reliable methodologies," it is excludable if it does "not have sufficient bearing on the issue at hand." *Vincent v. Am. Honda Motor Co.*, No. CV 108-067, 2010 WL 11537726, at \*8 (S.D. Ga. July 1, 2010) (quoting *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1121 (10th Cir. 2004), *clarified on reh'g*, 400 F.3d 1227 (10th Cir. 2005)).

While district courts have considerable leeway in making these determinations, the court's gatekeeper role "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible

evidence." *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (alteration in original) (quotation marks omitted) (quoting *Daubert*, 509 U.S. at 596). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison*, 184 F.3d at 1306 (citation omitted); *see also Coshap, LLC v. Ark Corp. Member Ltd.*, No. 1:16-cv-0904-SCJ, 2017 WL 9287017, at *2 (N.D. Ga. Dec. 12, 2017) ("When a party challenges the admissibility of an expert's opinions, '[t]he burden . . . rests on the proponent of the expert's opinion.'" (alteration in original) (citations omitted)). "Where the burden has not been satisfied, Federal Rule of Evidence 702 precludes expert testimony." *Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1351 (N.D. Ga. 2001) (citing *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999)) (other citation omitted). "Finally, '[a]ny step that renders the analysis unreliable renders the expert's testimony inadmissible.'" *Clarke v. Schofield*, 632 F. Supp. 2d 1350, 1354 (M.D. Ga. 2009) (alteration in original) (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003)).

## DISCUSSION

Plaintiff argues that the Court should exclude Dolan's testimony and opinions because she is not qualified to opine on Plaintiff's medical condition. (Doc. 21-1 at 4–9). Specifically, Plaintiff argues that Dolan is not qualified to opine that Plaintiff suffers from undiagnosed AUD or that AUD contributed to Plaintiff's mortality rate because Dolan "is not a medical doctor, nor does she have any medical training [] which would qualify her to make a medical diagnosis." (*Id.* at 3–4) (emphasis omitted). In response, Defendant argues that Dolan "is not offering her testimony as a physician"; rather, she "offer[s] the underwriting opinion that Plaintiff's medical records contained risk factors for several conditions that affected his life expectancy, including undisclosed [AUD], diabetes, and smoking" and that this opinion is "based on an established underwriting methodology." (Doc. 26 at 6–7).

"Courts are often faced with determining whether an expert's testimony exceeds h[er] qualifications." *Haines v. Webb*, No. 1:13-CV-1783-AT, 2014 WL 12828962, at *10 (N.D. Ga. Sept. 26, 2014) (citation omitted).

6

> [Although] a witness may not qualify as an expert in "an entirely different field or discipline," which includes areas "outside of—but related to—h[er] expertise," the "liberal" standard for qualification under Rule 702 is met so long as [s]he is "minimally qualified" and h[er] proposed opinions "stay within the reasonable confines of h[er] subject area."

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 WL 765019, at *31 (N.D. Fla. Feb. 28, 2021) (quoting *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304–05 (N.D. Ga. 2008)). An expert opinion on a specific cause of a plaintiff's medical injury "requires the identification and diagnosis of a medical condition, which demands the expertise and specialized training of a medical doctor." *Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1377 (M.D. Ga. 2007), *aff'd*, 300 F. App'x 700 (11th Cir. 2008) (per curiam). Accordingly, a life expectancy underwriter or consultant "ordinarily [is] not permitted to give opinions about the 'precise cause of a specific injury' . . . because [she] lacks[s] the medical training necessary." *See id.* (citations omitted).

According to Dolan, when preparing the Initial Report, she reviewed the Complaint, Plaintiff's deposition, and Plaintiff's medical records from various medical care providers and concluded that Plaintiff suffers from undiagnosed AUD and that Plaintiff's undetected AUD, together with his preexisting medical condition of diabetes and current smoking habit, affected his life expectancy as of October 8, 2019. (Doc. 21-3 at 2–3, 10; *see* Doc. 21-4 at 48:6–17). Dolan stated that her conclusion that Plaintiff suffers from undiagnosed AUD was based on her review of Plaintiff's October 14, 2019 abnormal imaging studies and lab reports, specifically a "liver [that] is markedly hyperechoic, poor penetration, ascites, . . . possible fatty infiltration," and "low levels of electrolytes." (Doc. 21-4 at 57:2–60:4, 89:19–25). Plaintiff argues that Dolan did not "consider the fact that [Plaintiff] had a ruptured appendix and was suffering an active acute infectious disease process in his abdomen when" the imaging studies and lab reports Dolan heavily relied upon were performed. (Doc. 21-1 at 14). Plaintiff further argues that Dolan failed to consider a CT scan of Plaintiff's abdomen conducted twenty-four hours after the abnormal

7

imaging studies and lab reports that showed Plaintiff's "liver parenchyma" was normal. (*Id.*; *see* Doc. 21-4 at 70:8–72:23).

Dolan is not qualified to offer a specific medical causation opinion. She is not a medical professional; and she lacks the knowledge, expertise, or experience required to make a medical diagnosis. (*See* Doc. 21-4 at 38:15–25, 39:16–20, 107:17–19); *see also Powell v. Texas*, 392 U.S. 514, 537 (1968) (Black, J., concurring) ("Stress is put upon the fact that medical authorities consider alcoholism a disease and have urged a variety of medical approaches to treating it."). Dolan has a Master of Science in Public Health with a concentration in epidemiology. (Doc. 21-3 at 27). During her deposition, she testified that the portion of her professional activities that involve calculating life expectancies is limited to providing expert opinion in litigation. (Doc. 21-4 at 16:10–17). Dolan has extensive experience in life insurance underwriting and in life expectancy calculations, and her experience in those areas qualifies her to offer an opinion on Plaintiff's life expectancy based on Plaintiff's preexisting medical record. Dolan is not qualified, however, to opine on whether Plaintiff has undiagnosed medical conditions or whether any undiagnosed medical condition caused Plaintiff's reduced life expectancy. *See Bowers*, 537 F. Supp. 2d at 1377.

Plaintiff also argues that Dolan is not qualified to opine on Plaintiff's life expectancy in this case because of her involvement in an unrelated epidemiology case. (Doc. 21-1 at 1– 2, 9–11; *see* Doc. 21-4 at 246–315). Dolan served as an expert witness in a case filed in the Southern District of Texas on July 14, 2014, and she submitted an affidavit stating her opinions as they related to the issues in that case. (Doc. 21-1 at 9–10; *see* Doc. 21-4 at 119:21–130:20, 241–46). Plaintiff argues that "Dolan has no credibility" because she stated in the sworn affidavit submitted in the Southern District of Texas action that former President Barack Obama "was involved in a conspiracy . . . to bring cheap and obedient labor to the U.S." which would result in increased immigration to the United States of African nationals "knowingly infected with the Ebola virus." (Doc. 21-1 at 1–2, 9–11). That statement has no bearing on Dolan's expertise as a life underwriting consultant. (*See* Doc. 26-1 at 3; Doc. 21-3 at 27–46). While the statements possibly may have some bearing

on the weight that a fact finder gives to Dolan's testimony, they do not render her unqualified.

In addition to arguing that Dolan is not qualified to opine on Plaintiff's medical conditions, Plaintiff argues that the Initial Report and attendant opinions should be disallowed because "the methodology [Dolan] employed is nonsensical"; but Plaintiff does not offer any additional specific arguments related to *Daubert* or Rule 702 to support this argument. (Doc. 21-1 at 2, 11). "*Daubert* supplies a list of four non-exclusive factors that courts may consider in evaluating the reliability of an expert's testimony: (1) testability; (2) error rate; (3) peer review and publication; and (4) general acceptance." *Bowers*, 537 F. Supp. 2d at 1350 (citing *Daubert*, 509 U.S. at 593–95) (other citation omitted); *see also United States v. Pon*, 963 F.3d 1207, 1220 (11th Cir. 2020) (listing the *Daubert* reliability factors). As explained above, the four *Daubert* factors are not exhaustive; rather, the court's "primary focus" should be "on principles and methodology, not on the conclusions that the[] [factors] generate." *Allison*, 184 F.3d at 1312 (quoting *Daubert*, 509 U.S. at 595). "For nonscientific expert testimony, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.' A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.'" *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (citing *Kumho Tire Co.*, 526 U.S. at 150).

With regard to the Initial Report, Dolan explained that she calculated Plaintiff's life expectancy using the following methodology: (1) Dolan determined Plaintiff's age as of October 8, 2019; (2) Dolan selected the appropriate life table to estimate Plaintiff's life expectancy—the life table for U.S. general population non-Hispanic white males; (3) Dolan reviewed Plaintiff's medical records and identified whether he had any medical impairments that would affect his life expectancy as of October 8, 2019; (4) Dolan identified which medical impairments—undiagnosed AUD, type 2 diabetes with comorbidities, and current smoking—would have the most impact on Plaintiff's life-expectancy as of October 8, 2019; (5) Dolan "[o]btain[ed] reasonable estimates from [peer-

9

reviewed] medical literature of mortality risks at or close to [Plaintiff's] status of the[] medical impairments and risks" she identified in step 4; (6) Dolan extracted the mortality risks as factors that could be applied to the selected life table; and (7) Dolan "[c]alculate[d] the adjusted life expectancy for [Plaintiff], using the selected life table adjusted by the factors described in step 6." (Doc. 21-3 at 2–3, 6). Dolan further explained that "[t]he methods [she] used to assess [Plaintiff's] mortality risk are the same as those used in life insurance underwriting" and that "[t]he calculations [she] used to derive [Plaintiff's] life expectancy are the same as those used in life settlements." (*Id.* at 2; Doc. 21-4 at 98:16–23). Dolan opined that Plaintiff "had a lower life expectancy than the 31.6 years expected for the average 48 year old U.S. non-Hispanic white male, with a middle estimate of 13.9 years." (Doc. 21-3 at 2).

After Plaintiff objected to the Initial Report, Defendant submitted the Supplemental Report with a new life expectancy opinion that used the same methodology set forth above, but that did not consider any undiagnosed medical conditions. (Doc. 26-1 at 3). The Court is not aware of any objections to Dolan's Supplemental Report. (*See* Docket). In the Supplemental Report, Dolan opined that the middle estimate for Plaintiff's life expectancy was 17.4 years as opposed to the previous calculation of 13.9 years. (*Compare* Doc. 26-1 at 3, *with* Doc. 21-3 at 3). Dolan also reviewed and considered the same materials—the Complaint, Plaintiff's medical records, and Plaintiff's deposition—as those she used in the Initial Report. (Doc. 26-1 at 3; *see* Doc. 21-3 at 3).

Dolan testified during her deposition that "as an underwriter, [she] ha[d] to go by standard, accepted principles in the life insurance industry. That is the basis of [her] expertise [and] [t]hat is why, and how," she conducted Plaintiff's "life expectancy analysis." (Doc. 21-4 at 98:16–23). Dolan has demonstrated that she has both experience and personal knowledge of the methodology generally accepted in the life underwriting industry; and she has carefully applied that methodology to calculate Plaintiff's life expectancy based on Plaintiff's preexisting medical condition of diabetes and smoking. (Doc. 26-1 at 3; *see* Doc. 21-4 at 298–315; *see also* Doc. 21-3 at 31). Therefore, Dolan's opinion, as proffered in the Supplemental Report, is based on reliable methodology, and

Dolan has demonstrated that she applied that methodology sufficiently to the facts at issue in this case.[1] *See United States v. Brown*, 415 F.3d 1257, 1266–69 (11th Cir. 2005) (finding that the opinion testimonies of two expert witnesses that met only the *Daubert* "general acceptance" factor was still reliable and admissible).

The ultimate consideration is whether Dolan's opinions will help the trier of fact to understand the evidence in this case. *Daubert* establishes that assessing "whether the [expert] testimony assists the trier of fact" is a "condition [that] goes primarily to relevance." *Fed. Trade Comm'n v. Fleetcor Techs., Inc.*, No. 1:19-cv-5727-AT, 2022 WL 3350066, at *3 (N.D. Ga. Aug. 9, 2022) (quoting *Daubert*, 509 U.S. at 591). The relevance of expert testimony is measured by its relation to issues in the case. *See Daubert*, 509 U.S. at 591. As such, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citations omitted). Furthermore, "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591–92. As mentioned above, the only issue remaining in this case is the issue of damages. (*See* Doc. 21-1 at 3; Doc. 26 at 2–4). Dolan was hired to calculate Plaintiff's life expectancy as of October 8, 2019—the date of his injury. Given that Plaintiff seeks to recover the costs of his past and future medical care expenses, Dolan's opinion regarding Plaintiff's life expectancy is both relevant to the case and helpful to the trier of fact. (*See* Doc. 1 at 13).

"The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion . . . ." *Fed. Trade Comm'n*, 2022 WL 3350066, at *14 (quoting *Frazier*, 387 F.3d at 1260). Defendant sufficiently has demonstrated that Dolan is qualified to issue her opinion and that such opinion is reliable, relevant, and helpful to the Court. As Plaintiff has not offered any argument related to *Daubert* or Rule 702 regarding Dolan's other opinions, he has waived any objection under these grounds. *See, e.g.*, *Callaway v. O'Connell*, 44 F. Supp. 3d 1316, 1324 (M.D. Ga. 2014) (declining to conduct

---

[1] Plaintiff raises no objection to the Supplemental Report; but out of an abundance of precaution, the Court considered whether either Report should be precluded. As noted, Dolan used the same acceptable methodology in preparing both Reports, and her qualification to opine on life expectancy is the same.

a Rule 702 analysis when the moving party did not argue that an expert's testimony was "otherwise inadmissible pursuant to Rule 702"); *Pertile v. Gen. Motors, LLC*, No. 15-cv-0518-WJM-NYW, 2017 WL 4099895, at *3 n.2 (D. Colo. Sept. 15, 2017) (noting that "any objection under Rule 702 not timely raised" in a motion "ha[d] been waived").

## CONCLUSION

Accordingly, Plaintiff's Motion to Preclude Vera Dolan from Offering Expert Testimony (Doc. 21) is **GRANTED in part** and **DENIED in part**. Dolan's Supplemental Expert Report (Doc. 26-1) is admissible under Rule 702. Dolan may testify to the opinions in the Supplemental Expert Report. Dolan may not testify to opinions in the Initial Expert Report (Doc. 21-3) that opine that Plaintiff suffers from undiagnosed AUD or that undiagnosed AUD affected Plaintiff's life expectancy.

**SO ORDERED**, this 15th day of August, 2023.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**

12